United States Court of Appeals
Fifth Circuit

**F I L E D**

June 11, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 04-10010

———————————

ART MIDWEST, INC, a Nevada Corporation; AMERICAN REALTY TRUST, INC, a Georgia Corporation;

> Plaintiffs - Intervenor Defendants -
> Counter Defendants - Appellees

ATLANTIC LIMITED PARTNERSHIP XII, a Michigan Limited Partnership; REGIONAL PROPERTIES, LIMITED PARTNERSHIP, a Michigan Limited Partnership

> Intervenor Plaintiffs - Appellants

> versus

DAVID M. CLAPPER; ATLANTIC MIDWEST LLC, a Michigan Limited Liability Company; ATLANTIC XIII LLC, a Michigan Limited Liability Company

> Defendants - Counter Claimants - Appellants

———————————

Appeals from the United States District Court for
the Northern District of Texas
3:99-CV-2355-R

_____

Before REAVLEY, DEMOSS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

This appeal arises from a real estate breach of contract suit related to the transfer of numerous apartment properties from appellant sellers, the Clapper entities, to appellee purchasers, the ART entities, under a series of interrelated agreements. Ohio law governs the particular regional transfer agreement that spawned the dispute between the parties.

The judgment of the district court is reversed. The judgment is predicated upon the finding of the jury that appellants breached the 1998 agreements, and that finding is based upon a decision that appellants failed to perform their title commitments under the Ohio regional agreement because of the legal non-conforming zoning use of a portion of the Toledo property. But this is not a decision for the jury; it presents a legal question of the construction of the terms of those agreements. Graham v. Drydock Coal Co., 667 N.E.2d 949, 952 (Ohio 1996) ("The construction of written contracts and instruments of conveyance is a matter of law.")(citation omitted).

That question must be resolved in favor of appellants and against appellees. Appellants, sellers of the property, warranted "good and marketable title" to the Toledo property "free and clear of all liens, encumbrances, reservations and restrictions." The only objection appellees made to the performance is that part of the property stands on a site zoned for use inconsistent with that of the apartments. The city's zoning designation of this property followed the apartment construction and does not impair its continued use and operation for that purpose. Ohio Rev. Code. Ann. § 713.15; City of Dublin v. Finkes, 615 N.E.2d 690, 693 (Ohio Ct. App. 10 Dist 1992). The right to continue that vested nonconforming use runs with the land and would have inured to the ART entities

2

via title transfer. See Edward H. Ziegler, Jr., 4 Rathkopf's The Law of Zoning and Planning § 72:20 (4th ed. 2003) (recognizing the right to continue a nonconforming use as an attribute of land ownership exercisable by a property purchaser); Kenneth H. Young, Anderson's American Law of Zoning § 6:40 (4th ed. 1996) ("The right [to maintain a nonconforming use] attaches to the land itself . . . . [and] can be exercised equally by the purchaser.").

Zoning ordinances always restrict the use of property, but that restriction does not render the title unmarketable. See Caryl A. Yzenbaard, Residential Real Estate Transactions § 5.12 (2005); see, also Greenhills Home Owners Corp. v. Village of Greenhills, 202 N.E.2d 192, 196 (Ohio Ct. App. 1st Dist. 1964), rev'd on other grounds, 5 Ohio St.2d 207, 215 N.E.3d 403 (Ohio 1966) ("A zoning law in itself . . . is not an encumbrance."); 77 AM. JUR. 2D Vendor and Purchaser § 170 ("A restriction imposed by legislative or municipal authority which is in existence at the time of contract is not generally considered such an encumbrance as may be availed of by the vendee to avoid an agreement to purchase."). Here, reading the contract provision promising a clean title commitment in pari matriae with the remainder of the agreement and the title commitment itself, it is plain that the "restrictions" referred to relate to restrictions of record on the sale or transfer of title, not to public use restrictions imposed by zoning ordinance. See Greenhills Home Owners Corp., 202 N.E.2d at 196 (noting that a zoning ordinance is not a title instrument included in the chain of title of zoned property and rejecting the construction that the word "restrictions" in the contract and deed referred to

3

zoning ordinance); see generally, Ziegler, §82:2 (recognizing that zoning ordinances and private restrictive covenants affecting title operate independently of one another and present separate legal issues). The title commitment schedule of exceptions for the Toledo property does not refer to zoning restrictions, but rather to restrictive covenants. Further, the separate ALTA 3.0 zoning endorsement required of the Clapper entities under the Toledo agreement only identifies and warrants the current zoning classification at time of contract and makes no representation as to whether the property conforms to existing zoning regulations. Even the more expansive ALTA 3.1 zoning endorsement available to the ART entities under the contract at their own election and expense provides assurance only that no violations of the applicable zoning ordinances currently exist. Neither endorsement warrants a property free from zoning restrictions.

We recognize that an existing violation of a zoning ordinance may constitute a title encumbrance. See Greenhills Home Owners, 202 N.E.2d at 196; Ziegler, § 82:2. However, the legal non-conforming zoning use at issue here is neither a violation nor a restriction of record on title; it is a restriction against a change in the use of the property from the present apartments. This does not render the title to the Toledo property unmarketable. See, e.g., Milton R. Friedman and James Charles Smith, Friedman on Contracts and Conveyances of Real Property § 9:10 (Practicing Law Institute 2005) ("A zoning ordinance is not an encumbrance affecting marketability of title. This is true even if the property is the subject of a nonconforming use . . . . Zoning differs in this way from restrictions created by deed or contract.").

4

Because there was no failure to tender marketable title, there was no default by the appellants. It follows that a determination of liability and damages must be decided anew. For that purpose we think it advisable to restart the assignment of the case, and we direct the chief judge to assign this case to a different judge of the district.

REVERSED AND REMANDED WITH INSTRUCTIONS.